555 So.2d 556 (1989)
Charles F. WEBB
v.
Sheila SMITH, David Reed, ABC Ins. Co. and DEF Insurance Company.
No. 89-CA-0391.
Court of Appeal of Louisiana, Fourth Circuit.
December 14, 1989.
Gilbert E. Stampley, New Orleans, for plaintiff-appellant.
John J. Hainkel, Jr., William R. Acomb, Porteous, Hainkel, Johnson & Sarpy, New Orleans, for defendants-appellees.
Before BARRY, BYRNES and PLOTKIN, JJ.
PLOTKIN, Judge.
Plaintiff Charles Webb appeals an involuntary dismissal in favor of defendant Sheila Smith, granted by the trial judge at the close of plaintiff's case. We reverse and remand to the trial court for further proceedings.
Facts
Plaintiff Webb sustained a gunshot wound to his right arm between 12:30 and 1 a.m. on October 16, 1984, at 3000 Mexico Street in the City of New Orleans. Defendant Smith owned and resided in the house where the incident took place. The gun which caused the wound also belongs to Ms. Smith, but it was in the possession of and was fired by co-defendant David Reed at the time of the incident.
Webb testified that he accompanied his friend Sam Cowart to Ms. Smith's house between 12:30 and 1 a.m. October 16, 1984. He stated that he and Cowart had visited Ms. Smith at that time of night on several previous occasions. Webb stated that Cowart got out of the car and rang the doorbell, but when there was no answer, he *557 returned to the car. Plaintiff said that he then went to the door and rang the bell, while Cowart stayed by the car. He said that Reed, whom he did not know, opened the door, pulled a gun and fired without any provocation, justification or warning. The shot hit him in the right arm, causing serious injury.
Reed described the incident differently. He testified that he was at Ms. Smith's home discussing a business enterprise on the evening of October 15, 1984 when she received several harassing phone calls. Reed stated that he heard Ms. Smith tell the caller, "I don't want you to come over. Please stop calling me." Subsequently, two men started ringing the bell and banging on the front door. Reed said that Ms. Smith retrieved her loaded pistol from a chest of drawers and that she was planning to go downstairs and shoot at the men through the door.
Reed testified as to two different versions of the events which occurred next. On cross examination, he stated that he shot Reed with a gun that he got from Ms. Smith. Then, on direct examination, Reed stated that he took the pistol from her. After acquiring the gun, he said that he placed it in his back pocket, went down the stairs and opened the door. Webb was standing in front of Cowart at the door, Reed stated. Cowart started lunging at him, so Reed pulled the pistol to show force. Cowart then grabbed the arm with which Reed was holding the gun and the gun discharged. Reed testified that Webb said that he had been hit with the gun. Webb and Cowart then left to go to the hospital.
Ms. Smith did not testify at the trial. However, two days prior to trial, she confirmed a default against Cowart, as third-party plaintiff. Neither plaintiff nor his counsel were informed of this hearing, and they were not present when she testified in the hearing. Therefore, the evidence is inadmissible in the case filed by Webb.
Involuntary Dismissal
La.C.C.P. art. 1672(B) provides as follows:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
A motion for involuntary dismissal may be granted only when the plaintiff has failed to establish his case by a "preponderance of the evidence." Fuller v. Wal-Mart Stores, Inc., 519 So.2d 366 (La.App. 2d Cir.1988).
In the instant case, the trial judge's comments made when he granted the motion for involuntary dismissal indicate his belief that the plaintiff failed to establish any breach of duty on the part of defendant Smith. We disagree. Our reading of the record indicates that the plaintiff established his case against the defendant by a preponderance of the evidence and that the granting of the motion for imvoluntary dismissal was therefore improper.
Breach of Duty
The Louisiana Supreme Court established the standard for determining homeowner liability for injury to persons on their property in Shelton v. Aetna Casualty & Surety Co., 334 So.2d 406 (La.1976). The court stated that the proper question to ask is "whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others." Id. at 410.
The duty of a homeowner to protect guests from injury was most recently discussed in Fontenot v. Bolfa, 549 So.2d 924 (La.App. 3d Cir.1989). In that case, the court affirmed a trial court judgment relieving a homeowner from liability when his daughter's former boyfriend shot her current boyfriend on the premises. The court said that although homeowners are not insurers of the safety of persons lawfully *558 present on the premises, they do owe a duty to avoid reasonably foreseeable danger to the guest and to keep the premises safe from hidden dangers. Id. at 926. Citing the Louisiana Supreme Court in Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984), the court stated that persons generally have no duty to protect others from the unanticipated or unforeseeable criminal acts of third persons. Id.
However, the instant case is distinguishable from Fontenot because Ms. Smith was the owner and the possessor of the gun which caused the injury and because Reed obtained the gun directly from her. Louisiana law places a duty of extraordinary care on persons in control of dangerous instrumentalities such as loaded guns. Cathey v. Bernard, 467 So.2d 9 (La.App. 1st Cir. 1985). That duty imposes an additional burden on Ms. Smith, beyond that imposed on her by her status as a homeowner, to protect persons from injury caused by that weapon.
Reed's uncontradicted testimony indicates that when Ms. Smith retrieved the gun from the drawer where it was kept she intended to shoot through the door at the two men who were ringing the bell and banging on the door. Her decision to retrieve the gun was an essential step in the chain of events which lead to plaintiff's injuries. She personally surrendered the gun to Reed, whether voluntarily or not, and Reed's subsequent actions resulted in the gunshot wound.
The evidence presented by the plaintiff was sufficient to establish all the elements necessary to prove a breach of the duty of extraordinary care imposed on persons in control of loaded guns. Once Ms. Smith retrieved her gun and transferred it to Reed, it was certainly foreseeable that someone would be injured by that weapon. Therefore, the plaintiff met his burden of establishing a case against Ms. Smith by a preponderance of the evidence and the trial court improperly granted the motion for involuntary dismissal.
For the above and foregoing reasons, the judgment of the trial court granting the defendant's motion for involuntary dismissal is reversed. The case is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.