**MARTHA LEPREE**  

**VERSUS**  

**CHRISTOPHER DORSEY AND CHERYL FIELDS**  

\*      **NO. 2022-CA-0853**

\*

    **COURT OF APPEAL**

\*

    **FOURTH CIRCUIT**

\*

    **STATE OF LOUISIANA**

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2021-05052, DIVISION "M"
Honorable Paulette R. Irons, Judge
\* \* \* \* \* \*
**Judge Dale N. Atkins**
\* \* \* \* \* \*

(Court composed of Judge Rosemary Ledet, Judge Paula A. Brown, Judge Dale N. Atkins)


Wesley M. Plaisance
BREAZEALE, SACHSE & WILSON, LLP
909 Poydras Street, Suite 1500
New Orleans, LA 70112

Laura S. Achord
BREAZEALE, SACHSE & WILSON, LLP
300 Washington Street, Suite 307
Monroe, LA 71201


    COUNSEL FOR PLAINTIFF/APPELLEE, Martha Lepree


Rudy W. Gorrell
1215 Prytania Street, Suite 223
New Orleans, LA 70130


    COUNSEL FOR DEFENDANT/APPELLANT, Cheryl Fields


            **AFFIRMED**
         **AUGUST 11, 2023**

DNA

RML

PAB

This is a real estate tax sale matter. Appellant, Cheryl Fields ("Ms. Fields"), seeks review of the trial court's August 11, 2022 judgment, which granted the Motion for Summary Judgment filed by Appellee, Martha Lepree ("Ms. Lepree"). Ms. Fields also seeks review of the trial court's October 3, 2022 judgment, which denied her Motion for New Trial. Upon review, we find that the trial court did not err in granting Ms. Lepree's Motion for Summary Judgment and in denying Ms. Fields' Motion for New Trial. For the following reasons, we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**Ms. Lepree's Petition**

This action concerns the confirmation of a tax sale title for the immovable property located at 8455 Beechwood Court, New Orleans, Louisiana (the "Property"). On June 14, 2021, Ms. Lepree filed a Petition wherein she named Christopher Dorsey ("Mr. Dorsey") and Ms. Fields as defendants and sought a judgment confirming her tax sale title and sole ownership of the Property "free of all right, title, and interest of" Mr. Dorsey and Ms. Fields. In the Petition, Ms. Lepree explained that she "acquired 100% tax sale title to the Property" on April 10, 2018, at a tax sale for unpaid 2016 and 2017 ad valorem taxes. She contended

1

that her tax sale certificate dated May 9, 2018 was recorded in the conveyance records of Orleans Parish on June 4, 2018.

According to Ms. Lepree's Petition, prior to the 2018 tax sale of the Property to Ms. Lepree, Mr. Dorsey acquired the Property through a cash sale on July 28, 1999; and Ms. Fields "had an interest in the Property pursuant to those certain acts recorded in the Conveyance Records for the Parish of Orleans as Instrument Number 558390 on July 17, 2014[,] and [Instrument Number] 466552 [recorded] on October 28, 2010." In the Petition, Ms. Lepree asserts that she notified Mr. Dorsey and Ms. Lepree that they had six months from the date of service of the Petition to institute a proceeding to annul the tax sale.

## Ms. Lepree's Motion to Appoint Attorney at Law to Represent and Receive Service

Subsequently, on July 10, 2021, Ms. Lepree filed a "Motion to Appoint Attorney at Law to Represent and Receive Service" ("Motion to Appoint"). Therein, Ms. Lepree explained that "[t]he residence(s) of . . . [Mr.] Dorsey and [Ms.] Fields are unknown and they may be deceased and/or are absentees" and that "no succession representative has been appointed." Accordingly, in her Motion to Appoint, Ms. Lepree requested that the trial court appoint an attorney to represent and receive service for Mr. Dorsey and Ms. Fields. On July 13, 2021, the trial court granted Ms. Lepree's Motion to Appoint and appointed Gary Carter (the "Curator Ad Hoc") to represent and receive service for Mr. Dorsey and Ms. Fields. Thereafter, on August 3, 2021, the Orleans Parish Sheriff's Office ("Sheriff's Office") personally served the Curator Ad Hoc with his Notice of Appointment and with Ms. Lepree's Petition.

**Curator Ad Hoc's Answer to Petition**

After receiving his Notice of Appointment and Ms. Lepree's Petition, the Curator Ad Hoc filed an "Answer to Petition" ("Answer") on October 7, 2021. Therein, on behalf of Mr. Dorsey and Ms. Fields, the Curator Ad Hoc denied the allegations in Ms. Lepree's Petition and asserted "each and every affirmative defense available to [Mr. Dorsey and Ms. Fields] pursuant to La. Code Civ. Proc. art. 1005,[1] including but not limited to, duress, error or mistake, estoppel, extinguishment of the obligation in any manner, failure of consideration, fraud, illegality, fault of others, and lack of proper notice in violation of due process."

**Ms. Lepree's Motion for Summary Judgment**

Thereafter, on May 13, 2022, Ms. Lepree filed a Motion for Summary Judgment, in which she sought a judgment against Mr. Dorsey and Ms. Fields confirming her sole ownership of the Property and enjoining and prohibiting them from claiming any right, title or interest in or to all or any portion of the Property. The Sheriff's Office served the Curator Ad Hoc with Ms. Lepree's Motion for Summary Judgment on May 18, 2022. In her "Memorandum in Support of Motion for Summary Judgment" ("Memorandum in Support"), Ms. Lepree cited La. Const. art. VII, § 25 (1974), as well as La. R.S. 47:2121(C) and 47:2266, in support of her contention that the trial court should confirm her tax sale title and sole ownership of the Property.[2] Specifically, Ms. Lepree argued that her title and

---

[1] Louisiana Code of Civil Procedure Article 1005 states that "[t]he answer shall set forth affirmatively negligence, or fault of the plaintiff and others, duress, error or mistake, estoppel, extinguishment of the obligation in any manner, failure of consideration, fraud, illegality, injury by fellow servant, and any other matter constituting an affirmative defense."

[2] At the outset, we note that the Louisiana Legislature has amended some of the laws regarding tax sales since the events of this case. The Louisiana Supreme Court has explained that the language of the statute in effect at the time of the tax sale applies to the sale, so our review is confined to the version of these statutes in effect at the time of this tax sale, April 10, 2018. *See*

ownership should be confirmed because the three-year peremptive period to redeem the Property had expired and the six-month prescriptive period to file an action to annul the tax sale after service of the citation and Petition had lapsed. Further, Ms. Lepree asserted that her tax sale certificate constituted prima facie evidence of the validity of the April 10, 2018 tax sale and that "Mr. Dorsey and Ms. Fields had the burden of proof in establishing any nullities to defeat the title but failed to do so." Additionally, Ms. Lepree contended that Mr. Dorsey and Ms. Fields had been "duly notified" of the tax sale and the time period within which to bring an action to annul the sale but had not done so.

In support of her Motion for Summary Judgment, Ms. Lepree attached an affidavit dated May 11, 2022, and her May 9, 2018 Tax Sale Certificate. In her affidavit, Ms. Lepree repeated the timeline of the transfers of the Property as previously outlined in her Petition. She also attested that "[t]he tax sale title . . . was not redeemed by [Mr. Dorsey or Ms. Fields] or any other person or entity nor ha[d] any suit been filed to annul [her] tax sale title." The May 9, 2018 Tax Sale Certificate listed the address and description of the Property; the date of the tax

_Cent. Props. v. Fairway Gardenhomes, LLC_, 2016-1855, 1946, p. 10 (La. 6/27/17), 225 So.3d 441, 448.

Louisiana Constitution Article VII, Section 25(B)(1) (1974) provides that after a sale of a property for nonpayment of taxes, "[t]he property sold shall be redeemable for three years after the date of recordation of the tax sale, by paying the price given, including costs, five percent penalty thereon, and interest at the rate of one percent per month until redemption." Regarding this three-year time period, La. R.S. 47:2121(C)(1) states that "[i]f the tax sale property is not redeemed within the redemptive period, then at the termination of the redemptive period, tax sale title transfers to its holder ownership of the tax sale property, free of the ownership and other interests, claims, or encumbrances held by all duly notified persons."

Additionally, La. R.S. 47:2266 is titled "[p]rocedure to quiet tax titles." Louisiana Revised Statutes 47:2266(A)(1) states, in pertinent part, that "[a]fter expiration of the redemptive period, an acquiring person may institute an ordinary proceeding against the tax sale parties whose interests the petitioner seeks to be terminated. The petition shall contain . . . notice that the title and full ownership in the property will be confirmed unless a proceeding to annul is instituted within six months after the date of service of the petition and citation."

4

sale as April 10, 2018; and Ms. Lepree as "the purchaser of tax sale title to 100% of the whole of the [P]roperty or the undivided interest of the tax debtor therein." Ms. Lepree also attached as exhibits the July 26, 1999 Cash Sale by which Mr. Dorsey acquired the Property and the July 15, 2018 Quit Claim Deed by which Ms. Fields acquired the Property.[3]

**Curator Ad Hoc's Note of Evidence**

On June 16, 2022, the Curator Ad Hoc filed a "Note of Evidence," wherein he detailed his efforts to search for Mr. Dorsey and Ms. Fields and attached supporting exhibits. The Curator Ad Hoc explained that he looked for Mr. Dorsey via internet search engines and directories but found only one person with his name associated with the address of the Property. Thereafter, according to the Note of Evidence, the Curator Ad Hoc prepared letters and sent them via certified mail to the addresses he had discovered for Mr. Dorsey. Additionally, the Curator Ad Hoc explained that he called all of the telephone numbers that he located in the online listing but was unable to reach anyone because those telephone numbers had been disconnected. Similarly, the Curator Ad Hoc explained that he looked for Ms. Fields via internet search engines and directories but found only one person with her name associated with the address of the Property. Again, the Curator Ad Hoc prepared letters and sent them via certified mail to the addresses he had discovered

---

[3] Ms. Lepree also attached an October 26, 2010 Tax Sale Certificate by which "Mike & Mike Properties" acquired the Property. As explained more fully throughout this Opinion, the Curator Ad Hoc eventually spoke with Ms. Fields, who explained that she obtained ownership of the Property via a quitclaim deed from her brother, who had acquired ownership of the Property from the previous owner, Mr. Dorsey.

We note that the name of Ms. Fields' brother is inconsistent in the record. The October 26, 2010 Tax Sale Certificate lists his name as "Frank Mike," but the transcript of the June 16, 2022 hearing, which is discussed more fully throughout the Opinion, lists his name as "Frank White, Jr."

for Ms. Fields. In his Note of Evidence, the Curator Ad Hoc explained that, as he had done for Mr. Dorsey, he called all of the telephone numbers that he located in the online listing pertaining to Ms. Fields but was unable to reach anyone because those telephone numbers had been disconnected.

The Curator Ad Hoc stated in his Note of Evidence that on October 23, 2021, he sent letters to Mr. Dorsey and Ms. Fields at the address of the Property via certified mail. Additionally, the Curator Ad Hoc explained that on May 24, 2022, he searched various social media platforms, including Facebook, Instagram, and Twitter, for profiles with Mr. Dorsey's and Ms. Fields' names but found no such profiles. Further, the Curator Ad Hoc published legal notice in the *Times Picayune* newspaper for three consecutive days on June 10, 11, and 12, 2022, listing the address of the Property and asking for anyone with information about Mr. Dorsey or Ms. Fields to contact him.

Additionally, in his Note of Evidence, the Curator Ad Hoc explained that he made one final attempt to locate Mr. Dorsey and Ms. Fields on June 15, 2022, and this time found a Facebook profile for a person named "Duchess Lygon" with the name "@cheryl.w.fields" in the description section of the Facebook profile. Through a mutual friend, the Curator Ad Hoc learned that Ms. Fields had changed her name to Duchess Lygon. The Curator Ad Hoc spoke with Ms. Fields (also known as Ms. Lygon) on June 15, 2022, and informed her of the proceedings against her regarding the Property. Ms. Fields told the Curator Ad Hoc that she had not previously received notice of the instant litigation and that she was not in New Orleans; but Ms. Fields stated that she would make every effort to attend the

hearing on Ms. Lepree's Motion for Summary Judgment and would hire an attorney.[4]

**Hearing on Ms. Lepree's Motion for Summary Judgment**

On June 16, 2022, the trial court held a hearing on Ms. Lepree's Motion for Summary Judgment. At the hearing, Derek Rovaris, Esq., appeared on behalf of the Curator Ad Hoc and reiterated the efforts undertaken to locate Mr. Dorsey and Ms. Fields as delineated in the Curator Ad Hoc's Note of Evidence. Ultimately, Ms. Fields did not attend the June 16, 2022 hearing; however, her brother appeared in her stead and requested that the hearing on Ms. Lepree's Motion for Summary Judgment be continued so that Ms. Fields could hire an attorney and oppose the Motion for Summary Judgment. That same day, the trial court signed a judgment, which continued the hearing until June 30, 2022, for Ms. Fields but granted the Motion for Summary Judgment against Mr. Dorsey, thereby extinguishing his interest in the Property.

However, when Ms. Fields' counsel of record attended the June 30, 2022 hearing on her behalf, he requested another continuance on the basis that Ms. Fields still had not been served with the Petition. The trial court reset the hearing on the Motion for Summary Judgment to August 11, 2022.

**Ms. Fields' Opposition to Ms. Lepree's Motion for Summary Judgment**

On August 8, 2022, Ms. Fields filed a "Memorandum in Opposition to Motion for Summary Judgment" ("Opposition") wherein she argued that summary judgment was improper because there remained genuine issues of material facts regarding: 1) whether she received notice of the Petition; 2) whether she received

---

[4] In light of the Note of Evidence, the trial court subsequently signed an Order on June 27, 2022, decreeing that the Curator Ad Hoc had fulfilled his duties and was relieved of his appointment.

notice of her right to redeem the property after the tax sale in accordance with La. R.S. 47:2156; and 3) whether Ms. Lepree or the City of New Orleans sent Ms. Fields a post-sale notice to her regarding her right to redeem the property. Ms. Fields did not attach any affidavits or other evidence to support the assertions in her Opposition.

On August 11, 2022, the trial court held a hearing on Ms. Lepree's Motion for Summary Judgment. After hearing arguments and considering the evidence, the trial court signed a judgment, which granted Ms. Lepree's Motion for Summary Judgment and declared her the sole owner of the Property. It stated in pertinent part:

> **IT IS ORDERED** that the Motion for Summary Judgment filed by Plaintiff Martha Lepree against Defendant Cheryl Fields and her heirs, successors, administrators and assigns as well as her surviving spouses, if any, and their heirs, successors, administrators and assigns is [**GRANTED].**
>
> **IT IS FURTHER ORDERED** that Plaintiff Martha Lepree is hereby declared the sole owner of the immovable property in the City of New Orleans, Parish of Orleans described as:
>
> [8455 Beechwood Court, New Orleans, Louisiana]
>
> (the "Property") and entitled to possession thereof free from all interests, claims and encumbrances which may be asserted by Defendant Cheryl Fields and her heirs, successors, administrators and assigns as well as her surviving spouses, if any, and their heirs, successors, administrators and assigns.
>
> **IT IS FURTHER ORDERED** that Defendant Cheryl Fields and her heirs, successors, administrators and assigns as well as her surviving spouses, if any, and their heirs, successors, administrators and assigns are forever enjoined and prohibited from claiming any right, title or interest in or to all or any portion of the Property owned solely and fully by Plaintiff Martha Lepree.

**Ms. Fields' Motion for New Trial and Judgment**

On August 19, 2022, Ms. Fields filed a "Motion for New Trial with Incorporated Memorandum in Support" ("Motion for New Trial"). Ms. Fields argued that the trial court erred in granting Ms. Lepree's Motion for Summary Judgment because neither Ms. Lepree nor the Curator Ad Hoc provided proof of service and citation of the Petition on Ms. Fields. Additionally, Ms. Fields argued that the trial court's grant of Ms. Lepree's Motion for Summary Judgment was improper because there was a genuine issue of material fact as to whether she was served with the post-sale notice in accordance with La. R.S. 47:2156. Ms. Fields stated in her Motion for New Trial that she still had not seen Ms. Lepree's Petition. After a hearing on September 22, 2022, the trial court signed a judgment denying Ms. Fields' Motion for New Trial on October 3, 2022.

Ms. Fields timely filed this devolutive appeal seeking review of the trial court's August 11, 2022, and October 3, 2022 judgments.

### ASSIGNMENTS OF ERROR

On appeal, Ms. Fields raises five assignments of error:

1. The Trial Court erred in granting the [Motion for Summary Judgment filed by] plaintiff/appellee, Ms. Lepree, . . . declaring her to be the sole owner of the Property based on a tax sale title to the Property acquired by virtue of a tax sale for unpaid 2016-2017 ad valorem taxes.

2. The Trial Court erred in denying the [Motion for New Trial] filed by the defendant/appellant, Ms. Fields, because the granting of the M[otion for Summary Judgment] was contrary to the law and evidence.

3. The Trial Court erred in determining that the plaintiff/appellee met her burden and established that there were no genuine issues of material fact that existed when the record was devoid of any factual support to evidence that either the plaintiff/appellee, Ms. Lepree, or the City of New Orleans, as tax collector, complied with the mandatory requirements of

post-tax sale notice to redeem the property as required by [La. R.S.47:2156].

4. The Trial Court erred in determining that service upon the [Curator Ad Hoc] constituted sufficient service to the defendant, Ms. Fields, when there is nothing in the record to evidence that the [Curator Ad Hoc] sent notice of the Petition to the defendant notifying her that she had six [] months after service of the Petition to file an action to annul the tax sale certificate.

5. The Trial Court erred in determining that the plaintiff, Ms. Lepree, or the City of New Orleans complied with all requirements of post-sale tax notifications, specifically, that the plaintiff or the City of New Orleans was not required to send notice to the defendant, Ms. Fields, prior to the filing of the [Petition] and the expiration of the redemption period that she had six [] months to redeem the property.

For purposes of our discussion, we will combine Ms. Fields' first, third, and fifth assignments of error before discussing her fourth and second assignments of error, respectively. Before we turn to the merits, however, we begin our discussion with the principles and standards of review applicable to the summary judgment procedure and to motions for new trial.

## DISCUSSION

**Summary Judgment Principles and Standard of Review**

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action . . . ." La. C.C.P. art. 966(A)(2). It "is favored and shall be construed to accomplish these ends." *Id.* "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

"An appellate court applies the *de novo* standard of review in examining the trial court's ruling on a motion for summary judgment and utilizes 'the same criteria that govern the trial court's determination of whether summary judgment is appropriate.'" *Lirette v. Adams*, 2022-0552, 0553, p. 19 (La. App. 4 Cir. 1/31/23), ___ So.3d ___, ___, 2023 WL 1252737, at *10 (quoting *Jones v. Boot Bar & Grill, C. Napco, Inc.*, 2022-0154, p. 12 (La. App. 4 Cir. 10/5/22), 350 So.3d 968, 978). "Accordingly, 'appellate courts ask the same questions the trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law.'" *Id.*

"The burden of proof rests with the mover" on a motion for summary judgment. La. C.C.P. art. 966(D)(1). "The party seeking summary judgment has the burden of proving there is no genuine issue of material fact." *Lirette,* 2022-0552, 0553, p. 19, ___ So.3d at ___, 2023 WL 1252737, at *10 (quoting *Jones*, 2022-0154, p. 12, 350 So.3d at 978). "[I]f the movant satisfies the initial burden, the burden shifts to the party opposing summary judgment to present factual support sufficient to show he [or she] will be able to satisfy the evidentiary burden at trial." *Id.* (quoting *Jones*, 2022-0154, pp. 12-13, 350 So.3d at 978-79). "However, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id.* at p. 20, ___ So.3d at ___, 2023 WL 1252737, at *10 (quoting *Jones*, 2022-0154, p. 13, 350 So.3d at 979).

"Only after the motion has been made and properly supported does the burden shift from the mover to the adverse party." *Id.* Thereafter, "the adverse party [must] produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La. C.C.P. art. 966(D)(1). "[The] adverse party may not rest on the mere allegations or denials of his [or her] pleading, but his [or her] response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he [or she] does not so respond, summary judgment, if appropriate, shall be rendered against him [or her]." La. C.C.P. art. 967(B). If a party includes supporting or opposing affidavits in connection with a motion for summary judgment, then these must be based upon the affiant's personal knowledge. La. C.P.P. art. 967(A). "'If the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his [or her] evidentiary burden of proof at trial, there is no genuine issue of material fact' and summary judgment is appropriate." *Lirette,* 2022-0552, 0553, p. 20, ___ So.3d at ___, 2023 WL 1252737, at *10 (quoting *Jones,* 2022-0154, p. 13, 350 So.3d at 979).

"A genuine issue is a triable issue." *Id.* at p. 21, ___ So.3d at ___, 2023 WL 1252737, at *11 (quoting *Jones,* 2022-0154, p. 14, 350 So.3d at 979). "More precisely, an issue is genuine if reasonable persons could disagree." *Id.* "However, 'if on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue.'" *Id.* "A fact is material when its existence or non-existence may be essential to the plaintiff's cause of action under the applicable theory of recovery." *Id.* "Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the

12

outcome of the legal dispute." *Id.* Whether a particular fact in dispute is material can only be seen in light of the substantive law applicable to the case because the applicable substantive law determines materiality. *Id.* "In considering a motion for summary judgment, the trial court cannot make credibility determinations but must construe reasonable factual inferences in favor of the party opposing the motion, resolving all doubt in favor of the opponent." *Id.*

**Assignments of Error Numbers One, Three, and Five: Whether the Trial Court Erred in Granting Ms. Lepree's Motion for Summary Judgment and Whether There Remained a Genuine Issue of Material Fact About Whether Ms. Fields Received Post-Sale Notice**

We have combined Ms. Fields' first, third, and fifth assignments of error because they all concern whether the trial court erred in granting Ms. Lepree's Motion for Summary Judgment on the basis of post-sale notice. That is, in her first assignment of error, Ms. Fields contends that the trial court erred in general in granting Ms. Lepree's Motion for Summary Judgment. In her third assignment of error, Ms. Fields asserts more specifically that "[t]he Trial Court erred in determining that [Ms. Lepree] met her burden and established that there were no genuine issues of material fact" because "the record was devoid of any factual support to evidence that either [Ms. Lepree], or the City of New Orleans, as tax collector, complied with the mandatory requirements of post-tax sale notice to redeem the [P]roperty as required by La. R.S. 47:2156." Finally, in her fifth assignment of error, Ms. Fields argues that "[t]he Trial Court erred in determining that [Ms. Lepree], or the City of New Orleans complied with all requirements of post-sale tax notifications, specifically, that [Ms. Lepree] or the City of New Orleans was not required to send notice to . . . Ms. Fields[] prior to the filing of the

13

Petition and the expiration of the redemption period that she had six [] months to redeem the [P]roperty."

A "redemptive period" is the time "period in which a person may redeem property as provided in the Louisiana Constitution." La. R.S. 47:2122(11). The redemptive period at issue herein is found in La. Const. art. VII, § 25(B)(1) (1974). It provides that after a sale of a property for nonpayment of taxes, "[t]he property sold shall be redeemable for three years after the date of recordation of the tax sale, by paying the price given, including costs, five percent penalty thereon, and interest at the rate of one percent per month until redemption." La. Const. art. VII, § 25(B)(1). If a tax sale party is "not duly notified at least six months before the termination of the redemptive period" of the right to redeem the property, then he or she can seek a redemption nullity to annul the tax sale. La. R.S. 47:2122(10).[5] Regarding the notice requirement, La. R.S. 47:2156, which is titled "[p]ost-sale notice," states that this post-sale notice must "inform the tax sale parties that the failure to redeem the property prior to the expiration of the applicable redemptive period will terminate the right to redeem the property." La. R.S. 47:2156(A). Thereafter, "[i]f the tax sale property is not redeemed within the redemptive period, then at the termination of the redemptive period, tax sale title transfers to its holder ownership of the tax sale property, free of the ownership and other interests, claims, or encumbrances held by all duly notified persons." La. R.S. 47:2121(C)(1). Additionally, "[a]fter expiration of the redemptive period, an acquiring person may institute an ordinary proceeding against the tax sale parties whose interests the petitioner seeks to be terminated." La. R.S. 47:2266(A)(1).

---

[5] A "redemption nullity" is defined as "the right of a person to annul a tax sale in accordance with [La.] R.S. 47:2286 because he was not duly notified at least six months before the termination of the redemptive period." La. R.S. 47:2122(10).

Louisiana Constitution Article VII, Section 25(A)(1) (1974) states that "[a] tax deed by a tax collector shall be prima facie evidence that a valid sale was made." Further, La. R.S. 47:2155(B) provides that "[a] certified copy of the tax sale certificate is prima facie evidence of the regularity of all matters regarding the tax sale and the validity of the tax sale." Therefore, if the tax sale purchaser presents a certified copy of the tax sale certificate, then the burden shifts to the former property owner to "prov[e] any defects in the tax adjudication proceedings." *NAR Sols., Inc. v. Kuhn,* 2022-00425, p. 4 (La. 12/9/22), 354 So.3d 1176, 1178 (quoting *Smitko v. Gulf S. Shrimp, Inc.*, 2011-2566, p. 11 (La. 7/2/12), 94 So.3d 750, 757-58). In *Pamplemoussier, L.L.C. v. Poche*, Pamplemoussier, L.L.C. ("Pamplemoussier"), purchased an interest in immovable property in 2004 and filed suit to confirm and quiet tax title in 2010. 2012-1829, p. 2 (La. App. 1 Cir. 9/13/13), 187 So.3d 480, 481. The record owners of the property, the Poches, reconvened and alleged the nullity of the tax sale for failure to send post-sale notices. *Id.* Thereafter, Pamplemoussier filed a motion for summary judgment seeking to confirm and quiet tax title, but the trial court denied the motion for summary judgment. *Id.* The Louisiana First Circuit Court of Appeal reversed the trial court's judgment and explained:

> A tax sale is presumed to be valid and the tax deed is prima facie evidence of the regularity of the tax adjudication proceedings. *See* La. Const. art. VII, § 25 A(1); *Lewis v. Succession of Johnson*, [20]05-1192[, p. 9] (La. 4/4/06), 925 So.2d 1172, 1177; *Cressionnie v. Intrepid, Inc.*, [20]03-1714[, p. 4] (La. App. 1 Cir. 5/14/04), 879 So.2d 736, 739. . . .

> At trial, after Pamplemoussier offered the certified copy of the tax deed and prayed for judgment confirming the tax sale and tax title, the Poches offered no testimony or other competent evidence. Their attorney argued that the entire record was before the court, including the affidavit of Ms. Poche that was submitted in opposition to the

prior motion for summary judgment. In the affidavit, Ms. Poche attested that they received no post-sale notices. . . .

The tax deed was prima facie evidence of the validity of the tax adjudication proceedings. *Cressionnie*, [2003-1714, p. 4,] 879 So.2d at 739; *see also* La. R.S. 47:2155[(B)] and La. Const. art. VII, § 25[(A)](1). It was then the Poches' burden to prove an alleged irregularity in the tax adjudication proceeding. *See Cressionnie*, [2003-1714, p. 4,] 879 So.2d at 739. In the absence of evidence to rebut the validity of the tax sale, Pamplemoussier was not required to prove that all requisites for a valid sale were complied with. *See* [*i*]*d.*

The presumptive validity of a tax sale can be rebutted only by direct and positive evidence to the contrary. *Pfefferle v. State of Louisiana*, 14 Orleans App. 211, 212 (1916). A sworn affidavit is hearsay and is not competent evidence unless its use is specifically authorized by statute. *Michael F. Smith, CPA v. Alford*, [20]04-0586[, p. 4] (La. App. 1 Cir. 3/24/05), 906 So.2d 674, 676. Accordingly, the affidavit was not admissible evidence and cannot be considered.

While the Poches' attorney argued that the post-sale notices . . . were not provided, the argument of counsel, no matter how artful, is not evidence. *Rising Resources Control, Inc. v. KIE Commodities* [*&*] *Fin*[.]*, L.L.C.*, [20]11-1026[, p. 4] (La. App. 1 Cir. 12/21/11), 80 So.3d 1217, 1220, *writ denied*, [20]12-0658 (La. 4/27/12), 86 So.3d 632.

The Poches failed to introduce competent evidence to rebut the validity of the tax sale. Consequently, Pamplemoussier was entitled to have the tax sale and tax title confirmed.

*Id.* at pp. 3-4, 187 So.3d at 482. *See also Libertas Tax Fund I, LLC v. Laiche*, 2021-0330, pp. 15-16 (La. App. 1 Cir. 12/22/21), 340 So.3d 236, 246 (wherein the First Circuit granted a motion for summary judgment confirming a property tax sale when the tax sale purchaser offered the tax sale certificate in support of its motion for summary judgment, and the property owner only asserted an allegation of improper pre-tax sale notice in opposition to the motion), *writ denied,* 2022-00160 (La. 4/12/22), 336 So.3d 82.[6]

---

[6] We note that Louisiana law requires pre-sale notice and post-sale notice but include *Laiche* in our analysis to demonstrate that no matter the type of notice at issue, the former property owner must do more than merely assert a lack of notice.

Likewise, in the matter *sub judice*, Ms. Lepree attached a certified copy of the tax deed with her Motion for Summary Judgment. This constituted prima facie evidence of the validity of the tax sale proceedings; and the burden then shifted to Ms. Fields to establish a genuine issue of material fact as to the validity of the tax sale. *See* La. Const. art. VII, § 25(A)(1); La. R.S. 47:2155(B); *NAR Sols., Inc.,* 2022-00425, p. 4, 354 So.3d at 1178; *Pamplemoussier*, 2012-1829, p. 3, 187 So.3d at 482. We find that Ms. Fields did not carry her burden. Instead, in her Opposition to Ms. Lepree's Motion for Summary Judgment, Ms. Fields merely argued that she did not receive notice of the sale of the Property and that the record was lacking proof of post-tax sale notice of her right to redeem the Property. This was insufficient to rebut the presumption of validity. *See Pamplemoussier*, 2012-1829, pp. 3-4, 187 So.3d at 482. Ms. Fields did not even attach an affidavit to her Opposition with an attestation about her alleged lack of post-sale notice; and she otherwise failed to include any exhibits and evidence to support her arguments. Rather, Ms. Fields' reliance on only the arguments of her counsel in her Opposition to Ms. Lepree's Motion for Summary Judgment was insufficient to create a genuine issue of material fact as to the validity of the tax sale deed. *See Pamplemoussier*, 2012-1829, p. 4, 187 So.3d at 482. *See also Numa C. Hero & Son, LLP Through Hero v. Brit UW Ltd.*, 2022-0405, pp. 7-8 (La. App. 4 Cir. 12/21/22), 356 So.3d 480, 484 (explaining that "[a]rgument of counsel and briefs, no matter how artful, are not sufficient to raise a genuine issue of material fact") (quoting *Attardo v. Brocato*, 1996-1170, p. 2 (La. App. 4 Cir. 2/5/97), 688 So.2d 1296, 1297). Thus, we conclude that the trial court did not err in granting Ms. Lepree's Motion for Summary Judgment.

**Assignment of Error Number Four: Whether Service of the Petition on the Curator Ad Hoc was Sufficient to Satisfy Due Process Requirements**

In her fourth assignment of error, Ms. Fields contends that the trial court erred when it determined that the service of the petition on the Curator Ad Hoc was sufficient service on Ms. Fields. Ms. Fields argues that "there is nothing in the record to evidence that the Curator Ad Hoc sent notice of the Petition to the defendant notifying her that she had six [] months after service of the Petition to file an action to annul the tax sale." Ms. Fields specifically faults the Curator Ad Hoc for not attaching a return receipt or green card from the certified mail containing the Petition sent to Ms. Fields.

Louisiana Code of Civil Procedure Article 5098 provides that "[t]he failure of an attorney appointed by the court to represent an unrepresented party to perform any duty imposed upon him by . . . shall not affect the validity of any proceeding, trial, order, judgment, seizure, or judicial sale of any property in the action or proceeding, or in connection therewith." As this Court has explained, the validity of any proceeding, including the seizure and sale of any property by executory process, is not affected by the failure of a curator ad hoc to perform any of his duties, unless he takes no actions to notify the absentee defendants of the pending action. *Sunset Harbour, LLC v. Heirs & Unopened Succession of Lassalle*, 2022-0298, p. 4 (La. App. 4 Cir. 7/20/22), ___ So.3d ___, ___, 2022 WL 2826835, at *2.

Additionally, Louisiana jurisprudence establishes that service on a curator ad hoc, appointed in accordance with a statutory provision to represent the interests of

an absentee defendant,[7] is sufficient to satisfy due process requirements, despite any failure of the curator ad hoc to communicate with the absentee defendant. *Carter v. First S. Farm Credit, ACA*, 49,531, p. 11 (La. App. 2 Cir. 1/14/15), 161 So. 3d 928, 935. *See also Nationstar Mortg. LLC v. Parham*, 51,102, p. 7 (La. App. 2 Cir. 2/15/17), 216 So.3d 231, 235 (citing La. C. C. P. art. 5098; *Carter*, 49,531, p. 11, 161 So.3d at 935; *Gulf Coast Bank & Tr. v. Warren*, 2012-1570, pp. 9-10 (La. App. 4 Cir. 9/18/13), 125 So.3d 1211, 1217-18). Rather, when a curator ad hoc is appointed to represent an absentee defendant, "the attorney shall use reasonable diligence to communicate with the defendant and inform him of the pendency and nature of the action or proceeding, and of the time available for the filing of an answer or the assertion of a defense otherwise." La. C.C.P. art. 5094. The First Circuit has found that a curator ad hoc met the standard of reasonable diligence when she mailed certified letters to the last known address of the absentee defendants. *Wright v. Waguespack*, 2002-0603, p. 5 (La. App. 1 Cir. 12/20/02), 836 So.2d 436, 439. Moreover, we note that La. R.S. 47:2122(4) states that the definition of "duly notified" for tax sale proceedings is met whether or not the "effort resulted in actual notice to the person."

In the matter *sub judice*, the trial court appointed the Curator Ad Hoc to represent Ms. Fields after Ms. Lepree was unable to locate and serve Mr. Dorsey and Ms. Fields with the Petition. The Sheriff's Office served the Petition on the Curator Ad Hoc on August 11, 2023, and he filed an Answer to the Petition on behalf of Mr. Dorsey and Ms. Fields on October 7, 2022. The record reflects that the Curator Ad Hoc made several attempts to contact Ms. Fields, which were

---

[7] In a proceeding to terminate a tax sale property party's interests, La. R.S. 47:2266(A)(2) provides that a curator ad hoc can be appointed to represent and receive service for a tax sale party whose residence is unknown.

ultimately successful when the Curator Ad Hoc learned that Ms. Fields had changed her name.

Based on our review of the record, we find that the Curator Ad Hoc exercised reasonable diligence in locating and notifying Ms. Fields of the Petition filed by Ms. Lepree. In his Note of Evidence, the Curator Ad Hoc stated that he mailed the Petition to Ms. Fields' last known address via certified mail after searching for her whereabouts on August 15, 2021. He tried to call Ms. Fields on the phone numbers listed for her online but found that they were disconnected. The Curator Ad Hoc sent another letter via certified mail to Ms. Fields on October 23, 2021, and published legal notice in the *Times Picayune* newspaper about the pending litigation on June 10, 11, and 12, 2022. The Curator Ad Hoc was finally able to speak with Ms. Fields on June 15, 2022, after a social media search revealed that she had changed her name to "Duchess Lygon." Accordingly, we find that the Curator Ad Hoc's actions met the standard of reasonable diligence.

Further, we find that Ms. Fields was duly notified of the tax sale through the service of the Petition on the Curator Ad Hoc. The Petition contained language informing Ms. Fields that her "tax sale title and sole ownership of the Property shall be confirmed in this proceeding unless a proceeding to annul the tax sale is instituted by the Defendants within six [] months from the date of service of the Petition and Citation on the Defendants in accordance with [La. R.S.] 47:2266." This language was sufficient to provide Ms. Fields with notice that she had six months to institute a proceeding to annul the tax sale as required in La. R.S. 47:2266.

Finally, as mentioned previously, La. R.S. 47:2122(4)(a) provides that a tax sale property owner is "duly notified" of the sale whether or not the "effort resulted

in actual notice to the person." The record here demonstrates that Ms. Fields was duly notified of the tax sale and her ability to nullify the action because the Curator Ad Hoc sent the Petition to Ms. Fields via certified mail. Whether or not the Curator Ad Hoc received a return receipt or confirmation that Ms. Fields actually received the certified mail is of no issue. Thus, we again conclude that the trial court did not err in granting Ms. Lepree's Motion for Summary Judgment.

**Assignment of Error Number Two: Whether the Trial Court Erred in Denying Ms. Fields' Motion for New Trial**

In her second assignment of error, Ms. Fields contends that the trial court erred in denying her Motion for New Trial because the granting of the Motion for Summary Judgment "was contrary to the law and evidence." Ms. Fields does not further expand on this argument in her brief to this Court. However, in her Motion for New Trial, Ms. Fields argued that the trial court should grant her motion because Ms. Lepree did not submit evidence that Ms. Fields had been provided with post-tax sale notice in her Motion for Summary Judgment. Ms. Fields raised that same argument her Opposition to Ms. Lepree's Motion for Summary Judgment.

"A new trial may be granted, upon contradictory motion of any party or by the court on its own motion, to all or any of the parties and on all or part of the issues, or for reargument only." La. C.C.P. art. 1971. Louisiana Code of Civil Procedure Article 1972 states that a court shall grant a new trial, upon a party filing a contradictory motion, in certain cases:

> (1) When the verdict or judgment appears clearly contrary to the law and the evidence.

> (2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.

21

(3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.

The cases listed in La. C.C.P. art. 1972 constitute peremptory grounds for the granting of a new trial. By contrast, La. C.C.P. art. 1973 is titled "[d]iscretionary grounds," and it provides that "[a] new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law."

The decision to grant or deny a motion for new trial "rests within the wide discretion of the trial court . . . ." *Occidental Props. Ltd. v. Zufle*, 2014-0494, p. 11 (La. App. 5 Cir. 11/25/14), 165 So.3d 124, 131 (citing *Lambert v. State Through Dep't of Transp. & Dev.*, 1996-160 (La. App. 5 Cir. 10/16/96), 683 So.2d 839, 845). Accordingly, an appellate court "reviews a ruling on a motion for new trial under an abuse of discretion standard of review." *Sunset Harbour, LLC v. Brown*, 2022-0572, p. 9 (La. App. 4 Cir. 1/9/23), 356 So.3d 1167, 1173 (citing *Jouve v. State Farm Fire & Cas. Co.*, 2010-1522, p. 15 (La. App. 4 Cir. 8/17/11), 74 So.3d 220, 229). As this Court has explained, "the abuse of discretion standard applies regardless which ground—peremptory or discretionary—the new trial motion is based upon." *Autin v. Voronkova*, 2015-0407, p. 4 (La. App. 4 Cir. 10/21/15), 177 So.3d 1067, 1070 (citing *GE Com. Fin. Bus. Prop. Corp. v. La. Hosp. Center., L.L.C.*, 2010-1838, p. 6 (La. App. 1 Cir. 6/10/11), 69 So.3d 649, 654; *Jones v. LSU/EA Conway Med. Ctr.*, 45,410, p. 6 (La. App. 2 Cir. 8/11/10), 46 So.3d 205, 210). This standard of review is "highly deferential," but a trial court abuses its discretion "if its ruling is based on an erroneous view of the law." *Id.* (quoting *LCR-M Limited P'ship v. Jim Hotard Props., L.L.C.*, 2013-0483, p. 9 (La. App. 4 Cir. 10/9/13), 126 So.3d 668, 675).

The party that files a motion for a new trial carries the burden to show that he or she is entitled to a new trial. *See Jackson v. Wise*, 2017-1062, p. 18 (La. App. 1 Cir. 4/13/18), 249 So.3d 845, 856; *see also Porche v. Winn-Dixie La., Inc.*, 1993-2075, p. 5 (La. App. 1 Cir. 10/7/94), 644 So.2d 699, 702. Louisiana jurisprudence establishes a general rule that "the trial court may summarily deny a motion for new trial if the motion simply reiterates issues thoroughly considered at trial." *Everett v. Air Prod. & Chemicals, Inc.*, 2022-0539, 0540, 0541, p. 16 (La. App. 4 Cir. 5/2/23) ___ So.3d ___, ___, 2023 WL 3193154, at *8 (quoting *Edgefield v. Audubon Nature Inst., Inc.*, 2017-1050, p. 5 (La. App. 4 Cir. 9/12/18), 318 So.3d 65, 69). "[A] motion for new trial based on the contention that a judgment is contrary to the law and evidence should be denied if the trial court's ruling is supportable by any fair interpretation of evidence, and a trial court judgment denying a motion for new trial should not be reversed unless the appellate court finds that the trial court abused its great discretion." *1137 N. Robertson, LLC v. Jackson*, 2019-0553, pp. 7-8 (La. App. 4 Cir. 11/20/19), ___ So.3d ___, ___, 2019 WL 6200294, at *4.

As mentioned previously, Ms. Fields did not advance any new arguments in her Motion for New Trial and simply reiterated the same issues that the trial court had already considered in conjunction with Ms. Lepree's Motion for Summary Judgment. Thus, the trial court was within its discretion to summarily deny Ms. Fields' Motion for New Trial. *See Everett*, 2022-0539, p. 16, ___ So.3d at ___ 2023 WL 3193154, at *8. Moreover, because Ms. Fields' Motion for New Trial was based on the contention that the trial court erred in granting Ms. Lepree's Motion for Summary Judgment and we have already determined that the trial court did not err in granting the Motion for Summary Judgment, we conclude that the

trial court did not abuse its wide discretion in denying Ms. Fields' Motion for New Trial. Accordingly, we affirm the trial court's October 3, 2022 judgment, which denied Ms. Fields' Motion for New Trial.

## DECREE

For the foregoing reasons, we affirm the trial court's August 11, 2022 judgment, which granted Ms. Lepree's Motion for Summary Judgment, as well as the trial court's October 3, 2022 judgment, which denied Ms. Fields' Motion for New Trial.

**AFFIRMED**